Shreve *v.* Fenno.

————————♦————————

BENJAMIN SHREVE & *al. versus* JEREMIAH FENNO & *al.,*
and GEORGE K. JEWETT, *Trustee.*

A trustee having disclosed that the principal defendants conveyed to him cer-
tain real estate by deed absolute in form, and assigned to him the cause of ac-
tion in a pending suit, in which judgment was afterwards recovered, and had
given him an unconditional bill of sale of their stock of goods in their store
which he took possession of—all which transfers were intended to secure
him against liabilities he had assumed and for moneys paid for them, it was
*held* that where there had been no fault or neglect on his part, he could not
be charged with the real estate, or with the amount of the judgment, and
required to credit the value thereof in part of their indebtedness to him; but
that he would be liable under the provisions of the R. S., c. 86, § 50, to de-
liver the goods to the plaintiffs upon the payment of his claims by them.
*Held,* that although the condition of the sale of the goods was not expressed in
the transfer, the sale was not void, as having been made in fraud of the stat-
ute, which requires that mortgages of personal property shall be recorded,
the trustee having taken possession of the property at the time of the sale.

EXCEPTIONS from *Nisi Prius* to the rulings, *pro forma,*
of CUTTING, J., discharging the trustee.

From the disclosure of the trustee, it appears that, prior
to and on the 28th day of December, 1859, he had become
liable, by indorsing for and advancing to the principal de-
fendants, the sum of $8367,03. Prior to that date he had

received from them a deed of all their right to redeem the store they then occupied, from a mortgage of about $3000; and, on that day, he received from them, a conveyance of their stock of goods then in the store; that the conveyance of their interest in the store, and of the goods, was intended to secure him for his liabilities and advances; that he there took possession of said goods, by an agent, and had sold a portion of the same prior to the service of the plaintiff's writ on him; that, on the 31st day of December, 1859, and at different times between that date and the service of the writ on him, on September 4th, 1860, he had advanced and became liable for the further sum of $2500, and had received from the proceeds of the goods sold the sum of $2955; that, when the writ was served on him, there was a balance of ·$7912,03 and interest due to him.

That the principal defendants assigned to him, as collateral security for his liabilities, a demand against Rufus Dwinel, in suit; and, since the service of the writ on him, the said trustee, judgment has been rendered in said action against the said Dwinel for the sum of $1670,89, damages, and $87,52, costs of suit; that execution has been issued, which is in no part paid. The execution the trustee regards as worth cent per cent.

The said trustee was also liable for the principal defendants on a bond to relieve them from arrest on an execution in favor of one Hazeltine, for about $300; but, he has been informed, that the debtors have disclosed thereon and performed one of the conditions of the bond.

The trustee estimates the store to be of the value of $5000 or $5500; the goods remaining in the store unsold, at the time the writ was served on him, of the value of $3000.

The trustee made and filed his disclosure at the first term; whereupon the plaintiffs moved the Court to order that, within some time, to be assigned by the Court, on payment or tender of such amount as may be due said trustee, and while the right of redemption exists, said trustee shall deliver over the property disclosed to the officer serving the process, to

be held and disposed of as if it had been attached on mesne process; and that, in default thereof, he shall be charged as the trustee of the principal debtors or defendants; and, if not to deliver over all said property, then the personal property and said Dwinel judgment; and, if not said real estate or said judgment, then said personal property.

That said sum to be paid or tendered, be the sum claimed by said trustee, with interest, less the disclosed value of said equity of redemption, and of said judgment; and, if not less said equity of redemption, then less said judgment, or its value, as disclosed; and, if not less said judgment, as aforesaid, then the whole sum.

But that such sum may be reduced by the amount which said trustee may in fact realize in cash from any of said property, in the meanwhile, and, especially, less by so much of said judgment as may be paid within the time to be assigned; and, if not as above, that the sum fixed may be the sum disclosed as due; and said plaintiffs offer to pay therefor, such sum, and within such time as said Court may order, as prayed for.

All of which motions and propositions the Judge presiding refused, and overruled, *pro forma*, and ordered the trustee to be discharged. To which orders, rulings, directions and refusals, the plaintiffs excepted.

*Peters*, for the plaintiffs.

The trustee's claims were for his liability on the defendants' paper. These cannot be secured by *absolute* sales or conveyances. 2 Greenl., 87; 28 Maine, 471; 20 Pick., 404.

The trustee must give credit, as in payment, for the real estate, judgment, &c. *Fales* v. *Reynolds*, 14 Maine, 89; *Howland* v. *Wilson*, 9 Pick., 18; *Lane* v. *Nowell*, 15 Maine, 86.

A sale as security is void, if there be no bond or writing given back. 8 Pick., 386; 6 N. H., 67; 9 N. H., 31; 10 N. H., 150; 5 Maine, 79.

The trustee is chargeable for the personal property, if the sale is a fraud, as against the plaintiffs. And we submit whether an absolute sale of chattels, as security merely, is not a fraud upon the mortgage law, which requires a record. All the decisions in this State that have tolerated security in the form of absolute sales of personal property, were made prior to the statute requiring the record of mortgages. But, in any view, the plaintiffs in the case are entitled to redeem upon some basis, and the questions here arise —

1. Shall not plaintiffs hold the personal property because sold in a form in fraud of the mortgage law?

2. If not, shall not said trustee give credit for said securities, and turn out the goods, or turn out the securities, or goods and securities. See § 50, R. S., c. 86.

*C. S. Crosby*, for the trustee.

The opinion of the Court was drawn up by

MAY, J. — Service of the writ was made upon the trustee September 4th, 1860, at which time the principal defendants were indebted to him, as appears from his disclosure, and the exhibit thereto annexed, marked A, in the sum of $7912,03, for moneys advanced prior to December 28th, 1859. The trustee was also surety for them on a poor debtor's bond, given to relieve them from arrest upon an execution, wherein the debt was about $300. The condition of the bond appears to have been performed by the subsequent, but seasonable taking of the poor debtor's oath, and the trustee's liability thereon was discharged. It further appears from the disclosure, that, prior to the service of the writ upon him, the trustee had received from said defendants a deed of all their right to redeem the store occupied by them, then under mortgage for about $3000; and also a conveyance of all the stock of goods therein, belonging to said defendants, of which he took actual possession at the time of the conveyance. The precise date of these conveyances does not appear, but the trustee states that they were

taken prior to December 28th, 1859, and that they were intended to secure him for his liabilities and advances on account of said defendants. They are not in the case, but are treated in argument by the counsel upon both sides as if they were, in form, absolute upon their face. The trustee also held, at the time of the service, as collateral security for his liabilities, a demand then in suit against Rufus Dwinel, upon which he has since obtained judgment for $1670,89, damages, and $87,52, costs; which judgment, though supposed to be good, had not been paid at the time of said disclosure. From the foregoing statements, which are to be taken as true, it appears that the whole property conveyed, including the judgment against Dwinel, was not sufficient in value to pay the actual claims of the trustee. Taking the property at the highest estimate of the trustee, and adding thereto the amount of the judgment, so far as it was a judgment for damages, the whole value at the time of the service of the writ did not exceed $7170,89, while the amount then due to the trustee for money advanced, or loaned directly to the defendants, between August 27, 1859, and December 29, 1860, exclusive of interest, was $7912,03, as before stated.

Upon these facts, the presiding Justice ordered the trustee to be discharged, and the question now presented upon exceptions, is, whether such order was erroneous. The counsel for the plaintiff contends that it was, and that the trustee ought to have been charged either absolutely, or conditionally, in accordance with some one of his motions made at *Nisi Prius.*

No question is made in regard to the right of the trustee to state in his disclosure the purposes for which the conveyances were made. Without such statement, both conveyances would appear to be absolute on their face, and neither of them could be impeached, except upon the ground of fraud. Upon the authority of *Stevens* v. *Hinkley & Tr.,* 43 Maine, 440, it is not perceived how any such ground, in view of all the facts, could be sustained.

In determining the question submitted to us, we will look at the conveyances separately. And, first, as to the deed of the equity of redemption, nothing is better settled, than that a trustee cannot be directly charged for the value of real estate which has been conveyed to him. Even if the conveyance is fraudulent as to creditors, he cannot be charged, unless he has received something by way of rents and profits. If fraudulent, the proper remedy is by attachment and levy on execution. That a trustee cannot be charged for real estate in his hands, whether the conveyance was fraudulent or not, I cite, as directly in point, *Plummer* v. *Rundlett & Tr.*, 42 Maine, 365; *Bissell* v. *Strong & Tr.*, 9 Pick., 562. In the case last cited, WILDE, J., remarks, that "in no case has a trustee been charged on account of lands held in trust for the principal, or as security for a debt." The deed before him, like the one in the present case, was absolute upon its face, but was in fact intended as security; and the trustee was discharged without any reference to the difference between the value of the estate conveyed, and the amount of the trustee's claim secured by the deed.

It is said that the real estate conveyed by the defendants to the trustee at its value, as well as the judgment against Dwinel, ought to have been treated as a payment of his claims *pro tanto*, and ordered the conditional judgment required by the R. S. of 1857, c. 86, § 50, in relation to that part of the stock of goods which remained unsold. That such an order, if it had been moved for, might properly have been made with reference to the goods, is not denied. They were in his possession at the time the process was served on him; they were not exempted by law from attachment; they were mortgaged, pledged or delivered to him by the principal defendants to secure the payment of a sum of money due to him; and the defendants had an existing right to redeem them by making such payment. The goods, therefore, came directly within the provisions of the statute. But, unless such an appropriation of the real estate, and the judgment against Dwinel can be made as will con-

stitute a part payment of the trustee's claims, such an order as the statute provides would be worthless to the plaintiffs; and, if such appropriation should be made, it is not perceived, in view of the estimated value of the property, and the larger amount of the trustee's claims, how the plaintiffs could be advantaged by it.

But, aside from this, we are not satisfied that this Court has the power, under the circumstances of this case, to apply either the real estate, or the judgment against Dwinel, towards the payment of the trustee's claims. The judgment, especially in the absence of proof of any want of diligence in collecting it, cannot be so applied before it is paid. The understanding of the parties must have been, that the money due upon it should be appropriated to the payment of the defendants' indebtedness, when paid, and not before. No other agreement can be inferred. So, too, it must have been understood, that the avails of the real estate should be appropriated in the same manner when received. Any earlier or different appropriation cannot be made as against a party who is not in fault, in violation of the mutual understanding of the parties. If there was evidence in the case that the trustee had refused to fulfil his contract with the defendants, or to use due diligence to appropriate the premises conveyed to him for the payment of his claims, then he might well be regarded as electing to retain the premises at their value in payment of his debt.

This case differs widely from the case of *Fales & al.* v. *Reynolds,* 14 Maine, 89, which is relied upon mainly by the plaintiffs to maintain the principle for which they contend. In that case, the action was against the grantor, or equitable mortgager, if he may be so called, who had refused, upon request, to fulfil or perform the contract which the absolute deed was given to secure; and it was held that the real estate conveyed might be treated by the grantee as a payment at its true value, for so much, and the grantee was permitted to recover for any balance that might be due to him under the contract or demands intended to be secured. A similar principle has been established in other cases for the protec-

tion of a party who is without fault. In the case of *Richards* v. *Allen*, 17 Maine, 296, the principle is recognized that a party who has made a verbal contract for the sale of real estate, and received money in part payment therefor, is not liable in an action brought to recover back the money until it is shown that he has placed himself in a position where he cannot make the conveyance, or that he has refused, upon request, and tender of performance by the other party to make it. Such a contract, though void by the statute of frauds, may be shown in defence of the action. *A fortiori*, therefore, an agreement between parties which is to be regarded as valid at law; and the conveyance of the real estate to the trustee, in this case, for the purpose of security, in the absence of fraud, in view of the authorities already cited, is to be treated as such, cannot be disregarded by the Court, in any of its parts, as against a party who is not in fault. The trustee, in this case, is such a party, and, therefore, is entitled to the full benefit of his contract with the defendants as he made it. To deprive him of it would be manifestly unjust.

The objection, that such a view of the law will enable a debtor to cover up his property, or portions of it, so as to prevent its attachment for his just debts, may indicate the necessity of some legislation to remedy the evil, similar to that which now exists in relation to personal property, mortgaged or pledged, but will not justify the Court in any action unauthorized by law.

In regard to the stock of goods, if the conveyance cannot be treated as a mortgage because it has no condition or defeasance, still, inasmuch as the possession was delivered to the trustee, it may properly be deemed a pledge, putting it upon the same footing as if no bill of sale had been executed. Where no fraud exists, justice requires that such a construction should be adopted. *Whittaker* v. *Sumner*, 20 Pick., 399. It secures to the creditor his lien upon the property in his possession, and, at the same time, gives to other creditors the benefit of the provisions of the R. S., c. 86, § 50, before cited. Such a construction is not a fraud upon

our registry laws, as is contended, because, in such a case, no registry of the bailment or pledge is required.

It is contended that such a conveyance of personal property, absolute on its face, if in truth it was made for collateral security only, is inoperative, as against creditors, by reason of the fraud which is to be presumed from such circumstances. Such a bill of sale, given for such a purpose, is not fraudulent, *per se*, in this State. Whatever may be the law of some other States, it has often been held by this Court, that it is only a circumstance for the jury in determining the question of fraud, and when unaccompanied by any other circumstances, has often been deemed, not only by juries, but by the Court, as insufficient to show it. *Reed* v. *Jewett*, 5 Maine, 96; *Stevens* v. *Hinkley*, before cited. We think, in this case, the proof is not sufficient to show any fraudulent intention on the part of the trustee. The amount of the defendant's indebtedness to him, exceeding, as it does, the value of all the property conveyed, both real and personal, including the judgment against Dwinel, repels any design on his part to defraud or delay other creditors.

If, however, the conveyance of the goods was fraudulent and void as to creditors, it seems that the trustee would be entitled to hold the property to secure his *bona fide* claims; *Ripley* v. *Otis*, 6 Pick., 475; *Stedman* v. *Vickery & Tr.*, 42 Maine, 132; and most certainly so, if he held it as a pledge, as above determined.

Whatever view, therefore, we take of this case, none of the motions of the plaintiffs which appear in the bill of exceptions, except that relating to the personal property, other than the judgment, could properly have been sustained. On this point they are sustained, and the plaintiffs will have the right to redeem according to the provisions of the statute and the principles stated in the opinion, and the presiding Judge, at *Nisi Prius*, may enter judgment accordingly.

*Exceptions sustained.*

TENNEY, C. J., RICE, APPLETON, CUTTING and KENT, JJ., concurred.